[Cite as *Hirsi v. Franklin Cty. Dept. Job & Family Servs.*, 2014-Ohio-1804.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Asha Hirsi,                                              :

     Appellant-Appellant,                       :                  No. 13AP-39
                                                                           (C.P.C. No. 12CVF03-3355)
v.                                                       :
                                                                           (REGULAR CALENDAR)
Franklin County Department                              :
of Job & Family Services,
                                                        :
     Appellee-Appellee.                         :

                                                        :

---

D E C I S I O N

Rendered on April 29, 2014

---

*Law Offices of Marcell Rose Anthony, LLC*, and *Marcell Rose Anthony, J.D., LL.M.*, for appellant.

*Ron O'Brien*, Prosecuting Attorney, and *Jesse W. Armstrong*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} This is an appeal by appellant, Asha Hirsi, from a judgment of the Franklin County Court of Common Pleas, affirming a decision by appellee, Franklin County Department of Job & Family Services (hereafter "the department"), revoking appellant's limited type B child care certificate.

{¶ 2} In 2009, the department issued a limited type B child care certificate to appellant. On January 12, 2012, the department informed appellant in writing that it was proposing to revoke her certification, pursuant to Ohio Adm.Code 5101:2-14-60, as well as assess a provider child care overpayment. The department's action arose out of allegations

that appellant had failed to keep attendance records as required by Ohio Adm.Code 5101:2-14-58(W).

{¶ 3} Appellant requested a county appeal review, and the department scheduled a hearing date for February 6, 2012. On the morning of the hearing, an attorney contacted the department, indicating he would be representing appellant and requesting a continuance of the hearing due to a conflict. In response, the department changed the scheduled hearing time from morning until later that afternoon. The attorney, however, failed t0 appear, and the hearing proceeded before an appeal review officer.

{¶ 4} Appellant attended the hearing, accompanied by her son, as well as a family friend, Nuro Ali. During the hearing, the department provided a Somali interpreter, employed by Access 2 Interpreters, to assist appellant. At the start of the proceedings, appellant's son raised concerns that appellant might have difficulty understanding the dialect used by the Somali interpreter. All of the parties then agreed to proceed with the interpreter but to also allow appellant's friend, Ali, to provide clarification when necessary.

{¶ 5} On February 10, 2012, the appeal review officer issued a decision finding that appellant failed to maintain attendance records as required by Ohio Adm.Code 5101:2-14-58(W) and that her non-compliance with the regulations governing limited providers supported the revocation of her certificate pursuant to Ohio Adm.Code 5101:2-14-60(B)(1). The appeal review officer further determined that appellant had received improper child care payments pursuant to Ohio Adm.Code 5101:2-16-71.

{¶ 6} Appellant appealed that decision to the trial court. On March 23, 2012, appellant filed a motion to submit supplemental evidence and for an evidentiary hearing. By entry filed April 24, 2012, the trial court denied appellant's motion to submit supplemental evidence and indicated it would "make a determination once all the parties' briefs are submitted if an evidentiary hearing is warranted." The parties subsequently submitted trial briefs. By decision and entry filed December 21, 2012, the trial court affirmed the department's decision, finding no constitutional violations and determining that the preponderance of reliable, probative, and substantial evidence supported the decision.

{¶ 7}   On appeal, appellant sets forth the following five assignments of error for this court's review:

> I. WHETHER THE APPELLEE AND/OR TRIAL COURT ERRED IN THEIR DECISIONS.
>
> II. WHETHER THERE WAS A DENIAL OF DUE PROCESS AND EQUAL PROTECTION AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION WHEN APPELLANT WAS NOT PROVIDED AN ADEQUATE INTERPRETER AND COULD NOT UNDERSTAND THE TRANSLATIONS OF THE INTERPRETER OR THE SUBSTANCE OF THE HEARING.
>
> III. WHETHER THERE WAS A DENIAL OF DUE PROCESS AND EQUAL PROTECTION AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION WHEN THE APPELLEE REFUSED TO CONTINUE THE HEARING SO THAT APPELLANT'S COUNSEL COULD BE PRESENT AND REPRESENT HER AT THE HEARING BEFORE APPELLEE.
>
> IV. WHETHER THE TRIAL COURT ERRED BY NOT ACCEPTING SUPPLEMENTAL EVIDENCE, OR ORDERING AN EVIDENTIARY HEARING.
>
> V. WHETHER THERE WAS A DENIAL OF DUE PROCESS OR EQUAL PROTECTION AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.

{¶ 8}   Under the first assignment of error, appellant challenges the trial court's determination that reliable, probative, and substantial evidence supported the department's decision.  Appellant argues that the testimony of interpreter Leyla Hersi, called as a witness by the department, was biased and that the appeal review officer's analysis of the attendance records was not reliable.

{¶ 9}   At the outset, while appellant's brief references the standard of review under R.C. 119.12, we note that a court of common pleas examines administrative appeal proceedings involving the revocation of type B child care certifications pursuant to R.C. 2506.01(A).  *Joseph v. Muskingum Cty. Dept. of Job & Family Servs.*, 5th Dist. No. CT2011-0004, 2011-Ohio-3024, ¶ 20.  *See also Fisher v. Franklin Cty. Dept. of Job & Family Servs.,* 10th Dist. No. 12AP-467, 2012-Ohio-6169, ¶ 6.

{¶ 10} R.C. 2506.04, which sets forth the standard of review that the court of common pleas must apply in considering an administrative appeal, states in part:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court.

{¶ 11} R.C. 2506.04 further provides that "[t]he judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, [R.C.] Chapter 2505." In *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000), the Supreme Court of Ohio noted the differing standards of review to be applied by a trial court and an appellate court following an administrative decision rendered under R.C. Chapter 2506, stating as follows:

> The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.
>
> The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more limited in scope." * * * "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." * * * "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."

{¶ 12} R.C. Chapter 5104 sets forth the procedures for "licensing or certifying publicly funded * * * Type B day-care homes (for one to six children)." *McAtee v. Ottawa Cty. Dept. of Human Servs.,* 111 Ohio App.3d 812, 815-16 (6th Dist.1996).  Individuals seeking to obtain certification as type B home service providers are required to submit to an application process with the department.  Ohio Adm.Code 5101:2-14-02.  A "limited certification" child care provider includes "[a] type B home provider or in-home aide who provides child care services to eligible children all of whom have the same caretaker." Ohio Adm.Code 5101:2-14-01(S)(2).

{¶ 13} Pursuant to Ohio Adm.Code 5101:2-14-60(B)(1), "[r]easons for denial of an application or revocation of a limited certificate may include [n]oncompliance with Chapter 5101:2-14 of the Administrative Code."  In accordance with Ohio Adm.Code 5101:2-14-58(W), a "provider shall maintain a daily attendance record, signed by the caretaker, indicating the hours of care provided for each child and in a manner prescribed by the [county department of job and family services]."

{¶ 14} Ohio Adm.Code 5101:2-16-71(A) states as follows:

> Child care providers and caretakers are responsible for making accurate, complete and timely disclosures of all information necessary to determine the following:
>
> (1) The caretaker's eligibility for child care benefits, which includes authorized hours for child care services, and a copayment.
>
> (2) Payment to the provider.
>
> (3) Attendance data.

{¶ 15} A "child care improper payment includes: '[c]hild care payments made to a child care provider for which the provider was not entitled.' "  Ohio Adm.Code 5101:2-16-71(B)(2).  Pursuant to Ohio Adm.Code 5101:2-16-71(C), a child care overpayment may occur as a result of "(1) [a]n error on the part of the * * * provider or the * * * provider's intentional withholding or falsification of information or misuse of child care services," as well as "(2) [s]ubmitted or received inappropriate attendance data."

{¶ 16} During the administrative hearing before the appeal review officer, Kimberly Tyson, a child care certification specialist, and Debbie Hatfield, a child care certification supervisor, appeared on behalf of the department. The department also presented the testimony of Hersi, the interpreter. Appellant appeared on her own behalf, and she presented the testimony of several witnesses, including Ali, and Ahmed Hassan.

{¶ 17} The following factual summary is taken from the findings set forth in the appeal review officer's decision. On January 10, 2012, appellant came to the South Community Opportunity Center ("SCOC") to submit paperwork necessary to renew her limited certificate with the Child Care Certification Unit; while at the SCOC, appellant also inquired about payments allegedly not received for child care services rendered. Due to her limited English proficiency, appellant required the assistance of an interpreter (Hersi) to communicate with Tyson, the child care certification specialist. Hersi is employed by Access 2 Interpreters, and routinely provides interpretation services at the SCOC pursuant to a contract between Access 2 Interpreters and the department.

{¶ 18} During her conversation with appellant, Tyson became concerned about discrepancies in the information provided by appellant; specifically, that "the hours of child care provided were inconsistent with hours billed for reimbursement from public funds." Tyson inquired as to appellant's method of maintaining daily attendance sheets for the children under her care. According to the department, appellant responded that she did not keep, and never had kept, such attendance records. In order to make appellant aware of the necessary paperwork, Tyson provided her with a copy of a blank attendance form. Tyson, with the assistance of the interpreter, repeatedly questioned appellant about the attendance records to ensure that she understood the nature of the records at issue. Appellant "continued to indicate that she did not keep such records and was unaware of the need to do so." Appellant further related "she did not learn of the need to keep such attendance records during her mandatory billing training [in 2009] because she did not understand the dialect of the Somali interpreter who interpreted the training course." Based upon this conversation, Tyson prepared a written statement reflecting that appellant had not kept attendance records since receiving her certification in February 2009. With the assistance of the interpreter, appellant signed the written statement.

{¶ 19} The department subsequently determined appellant was out of compliance with the regulations governing limited providers and informed her in writing of a proposed revocation of her limited certificate and an overpayment assessment. Following her receipt of the department's notice, appellant returned to the SCOC with some daily attendance records regarding the children in her care for the time period between 2009 and 2011. The department reviewed the originals and made copies, returning the originals to appellant.

{¶ 20} At the hearing, the department's theory of the case was that appellant, in order to avoid revocation of her limited certificate, fabricated all of the attendance records she submitted after January 10, 2012. The department also determined, following a review of the attendance records submitted by appellant, that "many months" worth of attendance records remained missing with respect to the children in her care.

{¶ 21} Hatfield, a child care certification supervisor, stated during the hearing that the original attendance records submitted by appellant "set forth the daily time-in and time-out hours in one color of pen, but * * * the parent's signature was set forth in a different color pen." According to Hatfield, it was "unlikely that the parent would consistently switch pens to write this information when contemporaneously completing attendance records each day." Hatfield, noting that "the handwriting on the attendance records varies greatly," expressed her view that the records were "completed by different individuals." Hatfield observed that "the spelling of the parent's name varies throughout the attendance records, suggesting that the parent was not solely responsible for the completion of these records," and that "many of the signatures on the attendance records do not appear to be the same as signatures set forth on other documents submitted by the parent." Hatfield viewed the timing of appellant's production of the attendance records, when considered in conjunction with her prior assertions that she did not keep such records, as evincing the attendance records were "fabricated" following the department's issuance of its notice of proposed revocation.

{¶ 22} Also appearing at the hearing on behalf of the department was Hersi, the interpreter who provided interpretation services during appellant's visit to the SCOC on January 10, 2012. Hersi testified that appellant, in responding to questions by Tyson, stated "she did not maintain attendance records." After Tyson explained the attendance

records in detail and showed appellant copies of blank attendance records, she "continued to state that she did not keep such records and had never kept such records." Specifically, appellant "responded that she was unaware of the need to keep such records," and that "she had not understood the dialect of the interpreter at the billing training presented by [the department], so she never knew the purpose of the attendance paperwork and did not complete it." During their discussion, appellant "continued to deny maintaining such records." Appellant, with assistance from Hersi, "signed the written statement drafted by Ms. Tyson reflecting the substance of the conversation regarding attendance records." The interpreter noted that appellant "apologized to Ms. Tyson for failing to complete the required records and stated that she would not make the same mistake in the future."

{¶ 23} Appellant spoke on her own behalf, explaining that the parent of the children for whom she provided services had completed the daily attendance records for each child. Appellant stated that she "misunderstood" which records were at issue in her conversation with Tyson on January 10, 2012, and that she "was not able to understand the dialect of Somali" the interpreter was speaking on that date. According to appellant, after returning home that day, she compared the blank copies of the attendance record forms provided by Tyson with the records she kept at home and "realized that she did have the particular records" requested by Tyson.

{¶ 24} During the hearing, appellant initially denied that her purpose in coming to the SCOC was to discuss billing matters, explaining that she came to SCOC to submit paperwork to renew her child care certificate. Appellant later stated, however, that she did initiate a conversation with Tyson "regarding missed child care payments." Appellant denied that the interpreter made efforts on January 10, 2012 to ensure that she understood the interpretation. While acknowledging that some attendance records might be missing due to error or oversight, appellant denied fabricating the attendance records she provided to the department after receiving the notice of proposed revocation and overpayment.

{¶ 25} Based upon the evidence presented, the appeal review officer made the following findings:

> Upon careful and extensive consideration of the record, I find that the attendance records presented by [appellant] were created after FCDJFS issued its notice of proposed revocation

and overpayment in an attempt to avoid revocation of her certificate and the imposition of an overpayment.

[Appellant] orally self-reported that she did not keep such attendance records during her conversation with Ms. Tyson on January 10, 2012.

Ms. Tyson * * * spent a lengthy period of time explaining the nature of the records about which she was inquiring. Ms. Tyson also showed [appellant] blank copies of the attendance record forms to provide a visual aid about the records at issue. Throughout that conversation, [appellant] continued to state that she did not keep such records. Before asking [appellant] to sign the written statement regarding the attendance records, Ms. Tyson, through Ms. Hersi, again explained in detail the records at issue and the substance of the statement. [Appellant] signed the written statement indicating that she did not keep attendance records as part of her home child care business.

The timing of [appellant's] production of attendance records, standing alone, strongly suggests that the records were created in an attempt to avoid revocation of her limited certification and imposition of an overpayment.

However, the proffered attendance records themselves also suggest that they were created after the fact. The handwriting and signatures on the records clearly vary from record to record; the parent's signature also varies from the signatures that appear on other documents submitted to FCDJFS by the parent. The parent's name varies throughout the records.

Additionally, other inconsistencies exist in the attendance records that cannot reasonably be explained except by a finding that the records were created after the fact.

{¶ 26} Based upon its review of the administrative record, the trial court determined that the department's decision was supported by substantial, reliable, and probative evidence. The court cited, in part, appellant's "conflicting testimony that she did not understand the interpreter who assisted her in the initial 2009 document training session several years prior, but then after the fact, submitted attendance records which she claims she kept all along." The court also cited conflicting testimony by appellant's witness, Asho Hassan (the parent of the children under appellant's care), who "could not

explain why she spelled her own name incorrectly on the attendance sheets she ostensibly signed, or explain why she signed the same form with different colored inks." The trial court specifically noted that "the hearing officer found Ms. Hatfield's testimony more credible than the appellant's regarding the attendance records provided by the appellant." The court found it "apparent that the appellant's explanation is not credible, as concluded by the hearing officer." The court also noted, apart from the issue of whether appellant fabricated the records at issue, that "there are still attendance records for which the appellant cannot account."

{¶ 27} Appellant contends the interpreter who appeared at the county appeal review provided biased testimony favorable to the department. The appeal review officer addressed the issue of bias, noting that Hersi, a professional interpreter, was not employed by the department, and "had no personal stake in the conversation she was interpreting." The review officer found no basis in the record to conclude the interpreter would not have alerted Tyson had there been "any reason to believe [appellant] was unable to understand the interpretation due to dialect, generational, or other differences." The review officer further found that appellant "was able to communicate clearly with Ms. Tyson through [the] interpretation services" and that appellant "in no way indicated that she was having difficulty understanding Ms. Hersi's interpretations or the conversation."

{¶ 28} While appellant cites her own testimony, and that of her witnesses, as supporting her claims regarding the attendance records, the appeal review officer found such testimony less than credible. As noted above, the appeal review officer cited the timing of appellant's production of attendance records as "strongly" suggesting the records "were created in an attempt to avoid revocation." Further, based upon an examination of the records, the review officer concluded they were "created after the fact," and cited numerous "other inconsistencies * * * in the attendance records that cannot reasonably be explained except by a finding that the records were created after the fact."

{¶ 29} Appellant's arguments regarding the credibility of witnesses, including alleged motives and bias on the part of the interpreter, essentially ask this court to reweigh the preponderance of the evidence, which we cannot do. Rather, it was the task of the review officer, as trier of fact, to evaluate the credibility of the witnesses and to weigh the evidence. As set forth above, the review officer made such determinations

rejecting appellant's claim of bias on the part of the interpreter and finding unpersuasive appellant's explanation regarding inconsistencies in the attendance records she submitted after receiving notice from the department. Upon review, we conclude that the trial court did not err in its determination that a preponderance of reliable, probative, and substantial evidence supported the department's decision.

{¶ 30} Appellant's first assignment of error is without merit and is overruled.

{¶ 31} Under the second assignment of error, appellant contends it was incumbent upon the department to provide an adequate interpreter and that the failure to do so violated her due process right to a fair hearing. According to appellant, the interpreter provided by the department failed to inquire as to which dialect she spoke and whether she understood every word spoken.

{¶ 32} In considering this argument, the trial court found that the record did not support appellant's claimed due process violation. The court noted that the department, although under no statutory duty, provided appellant with an independent interpreter. Further, after appellant's son raised concerns at the beginning of the hearing that appellant "may not be understanding the dialect used by the interpreter, all parties agreed to have the appellant's friend, Nuro Ali, provide clarification for the appellant, within certain parameters." (Emphasis deleted.) The trial court conducted "a review of the DVD hearing" and determined that appellant "participated in the hearing, was engaged in the hearing, and offered testimony through the interpreter regarding her defense." Noting that it was "apparent from a review of the DVD hearing that the appellant understood the seriousness and the nature of the charges against her," the court found no identifiable prejudice on the record. Finally, the court rejected appellant's contention that she is "constitutionally guaranteed an interpreter who not only speaks Somali, but also speaks her exact dialect based on a generational difference."

{¶ 33} In general, "[i]n order to satisfy the dictates of procedural due process, the decision maker must, in some meaningful manner, consider the evidence obtained at the hearing." *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning,* 12th Dist. No. CA91-01-009 (Dec. 2, 1991). In order to "demonstrate a reversible denial of due process, as with any alleged error on appeal, an appellant typically must make a showing

of identifiable prejudice." *In re C.W.,* 9th Dist. No. 06CA0033-M, 2006-Ohio-5635, ¶ 9. *See also State v. Hill,* 10th Dist. No. 10AP-177, 2010-Ohio-6121, ¶ 48.

{¶ 34} Here, the record supports the trial court's determination that the appeal review officer took reasonable steps to ensure appellant had a fair hearing, including not only providing an independent interpreter, but also allowing appellant's friend, upon the agreement of the parties, to assist in translating in order to address dialect concerns. Despite appellant's general claim that the interpreter was inadequate, she has failed to demonstrate that the actions taken by the appeal review officer to address interpretation/translation issues prejudiced the outcome of the hearing. Accordingly, the trial court did not err in holding that appellant's claims regarding the adequacy of the interpreter failed to establish a due process violation.

{¶ 35} Appellant's second assignment of error is without merit and is overruled.

{¶ 36} Under the third assignment of error, appellant contends she was denied due process when the department refused to continue the hearing date in order for her counsel to attend. Specifically, appellant argues that she hired an attorney (Bernard Yavitch) one week prior to the hearing. According to appellant, counsel spoke by telephone with the appeal review officer, but the review officer denied a requested continuance. Appellant maintains that the failure to have counsel appear at the hearing denied her of the right to "effective assistance of counsel."

{¶ 37} In the administrative decision, the appeal review officer noted that the department scheduled the administrative hearing for February 6, 2012, and that appellant received proper notice of the time and date. Further, on the morning of the hearing, an attorney contacted the department on appellant's behalf and "orally requested an extension of the hearing from 11:00 a.m. until the afternoon of February 6, 2012." The appeal review officer noted that, "[a]lthough neither this attorney nor [appellant] complied with the requirements of OAC 5101:2-14-40(E)(2), [the department] extended the time from 11:00 a.m. to 2:00 p.m. based upon the oral request."

{¶ 38} In its review of the administrative record, the trial court addressed the issue of the request for a continuance, holding in part:

> Appellant requested a hearing which was scheduled for February 6, 2012. On the morning of the hearing, an attorney contacted "Laura" at FCJFS, indicated that he would be

representing the appellant, and requested that the hearing be continued due to a conflict. FCJFS changed the hearing to a later time that day in order to accommodate the appellant's attorney. However, the attorney did not appear and FCJFS went forward with the hearing. The appellant's attorney submitted an affidavit indicating that he requested the hearing be scheduled to another day, not later that afternoon. See Affidavit of Bernard Yavitch. Thus, there appears to be a discrepancy as to whether the attorney asked that the hearing be continued for later that day or whether he asked that the hearing be continued to another date. However, this Court is confined in making its decision based upon the record of the proceedings and the transcript of the February 6, 2012 hearing. A review of the DVD of the hearing is devoid of any continuance request by the appellant. Furthermore, the DVD of the hearing indicates that the appellant participated in the hearing, understood the seriousness and nature of the charges against her, and offered testimony in her defense through an interpreter, and also a friend who interpreted for clarifications.

{¶ 39} There is no dispute that the department provided appellant proper notice of the county review appeal as required under the administrative rules. While those rules provide that a legal representative "may be present" at the appeal review (Ohio Adm.Code 5101:2-14-40(H)(1)), nothing in the record suggests action on the part of the department that amounted to a denial of a right to representation. As noted by the trial court, while the record reflects a telephone conversation between an attorney and a department representative on the morning of the scheduled hearing date, the record is equivocal as to whether the attorney requested a continuance for a different day (as opposed to later in the afternoon on the scheduled hearing date). The record indicates, however, that the department rescheduled the time of the hearing (on February 6, 2012) from 11:00 a.m. until 2:00 p.m.

{¶ 40} In considering the administrative record, the trial court essentially found that the department did not act unreasonably in attempting to accommodate the last minute request for a continuance. The court also noted that appellant did not request a continuance during the hearing itself and that she participated in the hearing and offered her own testimony. Upon review of the record, we find the trial court did not err in its determinations that appellant received a fair hearing and that the department did not

deprive her of the opportunity to representation of counsel. Appellant's contention that the failure to have an attorney at the administrative hearing in effect denied her "effective assistance of counsel" is unpersuasive, as the Sixth Amendment right to effective assistance of counsel is not implicated in the context of an administrative proceeding. *See, e.g., Lykes v. Akron Dept. of Public Serv.,* 9th Dist. No. 26570, 2014-Ohio-578, ¶ 14 (because appellant "had no right to counsel for purposes of his administrative appeal, he cannot be heard to complain that trial counsel was ineffective in his representation").

{¶ 41} Appellant's third assignment of error is without merit and is overruled.

{¶ 42} Under the fourth assignment of error, appellant argues that the trial court erred in failing to grant her motion for an evidentiary hearing to supplement the administrative hearing and in failing to consider her supplemental affidavits. In support, appellant relies upon the provisions of R.C. 2506.03(A). In her motion before the trial court, appellant argued she was entitled to an evidentiary hearing by the court because the department never advised her of the right to counsel at the administrative hearing and because she was not prepared to testify.

{¶ 43} Generally, a trial court hearing an administrative appeal is confined to the transcript of the proceedings unless it appears, on the face of the transcript or by affidavit of the appellant, that one of the five following exceptions applies: "(1) the transcript does not contain all information proffered at the hearing; (2) the appellant was not permitted to offer and examine or cross-examine witnesses; (3) the testimony was not given under oath; (4) the officer or agency lacked, or refused to invoke, the power of subpoena; or (5) the officer or body failed to file with the transcript, conclusions of fact supporting the final order." *Posner v. Cleveland,* 8th Dist. No. 95997, 2011-Ohio-3071, ¶ 14, citing R.C. 2506.03(A).

{¶ 44} Even in cases in which an exception under R.C. 2506.03 is applicable, "the moving party is not entitled to a de novo hearing; instead, the purpose of the statute is to allow for the trial court to fill gaps in the transcripts." *Buckosh v. Westlake City Schools,* 8th Dist. No. 91714, 2009-Ohio-1093, ¶ 26, citing *Moody v. Westerville City School Dist. Bd. of Edn.,* 10th Dist. No. 07AP-551, 2008-Ohio-591, ¶ 14. Moreover, " 'the mere filing of an affidavit does not automatically quicken the statutory right nor compel the Court of Common Pleas to take additional evidence unless the record will support some one of the

deficiencies enumerated in the statute.' " *Ziss Bros. Constr. Co., Inc. v. Independence Planning Comm.*, 8th Dist. No. 90993, 2008-Ohio-6850, ¶ 40, quoting *12701 Shaker Blvd. Co. v. Cleveland*, 31 Ohio App.2d 199, 211 (8th Dist.1972). Ultimately, an appellate court "will not overturn a trial court's decision unless the moving party ' "demonstrate[s] that there is a reasonable likelihood that the outcome would have been different had they been permitted to introduce additional evidence." ' " *Buckosh* at ¶ 27, quoting *Dawson v. Richmond Hts. Local School Bd.,* 121 Ohio App.3d 482, 488 (8th Dist.1997), quoting *Franklin Twp. v. Village of Marble Cliff,* 4 Ohio App.3d 213 (10th Dist.1982).

{¶ 45} Appellant's claim that the department failed to advise her that an attorney could be present at the administrative hearing is not one of the enumerated exceptions under R.C. 2506.03(A). Although appellant contends she was unaware of her right to have an attorney represent her at the administrative hearing, we have previously noted that an attorney contacted the department on her behalf on the morning of the scheduled hearing. We also note that the department's notice of overpayment sent to appellant included information regarding both the right to a hearing and to a "representative," i.e., a "lawyer." Here, appellant's motion requesting the trial court to conduct an evidentiary hearing did not cite to any of the specific exceptions under R.C. 2506.03(A). Further, as recognized by the trial court, appellant attended the hearing and the appeal review officer afforded her the opportunity to present arguments and call witnesses. Accordingly, the trial court did not err by confining its review to the transcript and in denying the motion for an evidentiary hearing (and to submit supplemental evidence).

{¶ 46} Appellant's fourth assignment of error is without merit and is overruled.

{¶ 47} Under the fifth assignment of error, appellant argues the trial court erred in failing to find that the proceedings before the department violated her due process and equal protection rights. With respect to her equal protection argument, appellant asserted before the trial court that she is a member of various protected classes (African-American, female, and Muslim) and that the department "purposely and intentionally" discriminated against her. Appellant also argued that the appeal review officer was employed and appointed by the department and, therefore, purportedly conducted the administrative proceedings in a biased manner.

{¶ 48} In general, "[t]he Equal Protection Clauses require that all similarly situated individuals be treated in a similar manner." *Ohio Apt. Assn. v. Levin,* 127 Ohio St.3d 76, 2010-Ohio-4414, ¶ 33.   In order for selective or discriminatory enforcement to constitute a denial of equal protection, "an element of purposeful or intentional discrimination must be shown." *Taylor v. Wayne Twp. Bd. of Trustees,* 12th Dist. No. CA2008-o2-032, 2009-Ohio-193, ¶ 26.

{¶ 49} In addressing appellant's equal protection challenge, the trial court found "nothing in the record" to substantiate that the department treated appellant any differently "than any other Type B licensed care provider who failed to follow the regulations regarding attendance documentation." The court also cited a lack of "any evidence" demonstrating how appellant "was treated differently from similarly situated individuals."  Based upon this court's review, we agree with the court's determination that appellant has made no showing the department, in enforcing its regulations, singled her out or acted intentionally to discriminate against her on the basis of her membership in a protected class.

{¶ 50} Appellant's claim that she was denied due process because the appeal review officer selected by the department could be biased is not persuasive.   Ohio Adm.Code 5101:2-14-40(G) provides in part that the department "shall be responsible for conducting the county appeal review," with the principal qualification that the individual conducting the appeal review "shall not be someone who was a party to the decision that is the subject of the review."  Further, "an 'appellate court must presume that the decision of an administrative board is valid and arrived at in a proper manner.' " *In re Tonti,* 10th Dist. No. 92AP-1361 (Aug. 3, 1993), quoting *Ohio Motor Vehicle Dealers Bd. v. Cent. Cadillac Co.,* 14 Ohio St.3d 64, 66 (1984).   This presumption "places upon the party contending bias to present evidence of impropriety or bias." *Id.*  In the present case, apart from appellant's general allegation that "[t]he hearing officer was an employee" of the department, appellant has not shown evidence of bias on the part of the appeal review officer.

{¶ 51} Accordingly, the fifth assignment of error is without merit and is overruled.

{¶ 52} Based upon the foregoing, appellant's first, second, third, fourth, and fifth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, affirming the decision of the department, is hereby affirmed.

*Judgment affirmed.*

SADLER, P.J., and CONNOR, J., concur.

_____