[Cite as *Kelly v. Dept. of Jobs & Family Servs.*, 2014-Ohio-3312.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| LINDA KELLY | | C.A. No.     27208 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEPARTMENT OF JOBS & FAMILY SERVICES | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No.     CV 2013 06 3058 |
| Appellee | | |

DECISION AND JOURNAL ENTRY

Dated: July 30, 2014

GALLAGHER, Judge.

**{¶1}** Appellant, Linda Kelly, appeals from the judgment of the Summit County Court of Common Pleas affirming an administrative decision revoking her type B home childcare provider certification. This Court reverses.

I.

**{¶2}** In 2000, Ms. Kelly was certified as a type B home childcare provider in Summit County. On March 27, 2013, a two-year-old child, J.M., died while in Ms. Kelly's care after he choked on a toy. On March 28, 2013, the Department of Jobs and Family Services ("JFS") notified Ms. Kelly in writing that it was suspending her childcare contract. Later that same day, JFS provided her with a second letter immediately revoking her certification and contract due to her noncompliance with Administrative Code Section 5101:2-14-06 and Chapter 5104 of the Revised Code. After the agency determined that the second letter was insufficient, a third letter was delivered to Ms. Kelly on March 28, 2013, clarifying that her certification was immediately

revoked due to her noncompliance with Administrative Code Section 5101:2-14-20, 5101:2-14-06(C)(1) and Chapter 5104 of the Revised Code.

{¶3} Ms. Kelly requested a county appeal review of JFS's decision to revoke her certification. The hearing officer issued a decision pursuant to Ohio Administrative Code 5101:2-14-40(M) that found, based on the evidence and testimony presented at the county appeal review, the agency was correct in revoking her certification. Ms. Kelly filed a timely administrative appeal to the court of common pleas under Revised Code Section 2506. The trial court affirmed the administrative decision, finding that it was supported by reliable, probative, and substantial evidence. Ms. Kelly filed a timely appeal with this Court. She raises two assignments of error for our review which we address out of order to facilitate our analysis.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT FOUND THAT APPELLANT WAS UNAMBIGUOUSLY INFORMED OF THE REASON FOR THE REVOCATION OF HER LICENSE.

{¶4} Ms. Kelly argues that the trial court erred in affirming the administrative decision as it was premised, in part, on the violation of a regulation that she did not receive notice of prior to the hearing. Specifically, Ms. Kelly maintains that the decision revoking her certification was based on Administrative Code Section 5101:2-14-19(A)(11), which was not one of the regulations listed on JFS's revocation notice. This Court agrees.

{¶5} "[A] court of common pleas examines administrative appeal proceedings involving the revocation of type B child care certifications pursuant to R.C. 2506.01(A)." *Hirsi v. Franklin Cty. Dept. Job & Family Servs.*, 10th Dist. Franklin No. 13AP-39, 2014-Ohio-1804, ¶ 9. A trial court reviewing an administrative appeal may find that the order was

"unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."  R.C. 2506.04(A).  Section 2506.04(A) further provides that "[t]he judgment of the [trial] court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code."  *Id.*

{¶6}    In *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142 (2000), the Ohio Supreme Court clarified that "[t]he standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is 'more limited in scope'" than the standard of review applied by the trial court.  (Emphasis deleted.)  *Id.* at 147, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984).  "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court."  *Id.*, quoting *Kisil* at fn. 4.

> It is incumbent on the trial court to examine the evidence.  Such is not the charge of the appellate court.  * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial.  Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.

*Id.*, quoting *Lorain City School Dist. Bd. Of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988).

{¶7}    An appellate court's determination of an administrative appeal is limited to whether the trial court abused its discretion.  *Lorain City School Dist. Bd. Of Educ.* at 261.  An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8}    At the time Ms. Kelly's certificate was revoked, Ohio Administrative Code Section 5101:2-14-06 authorized JFS to revoke a type B certification if it determined that the provider was noncompliant with Administrative Code Section 5101:2-14 or Chapter 5104 of the Revised Code.  Ohio Adm.Code 5101:2-14-06(B)(1), effective July 1, 2011.  A revocation under this section, however, could not occur prior to a county appeal review pursuant to Section 5101:2-14-40 unless JFS determined that children were at risk of being abused or neglected or that the daycare's conditions endangered the children's health, safety or well-being.  Ohio Adm.Code 5101:2-14-06(C)(1), effective July 1, 2011.  If JFS determined that such conditions were present, it could immediately revoke the type B certificate and tender a written notice to the provider within two working days that provided such information as the reason for the revocation and "[t]he rule or statute violated * * *."  Ohio Adm.Code 5101:2-14-06(D)(2), effective July 1, 2011.

{¶9}    If the daycare provider requests a county appeal review of the JFS decision in accordance with Section 5101:2-14-40, JFS is required to "[e]xplain [at the review hearing] the reasons for the proposed action" and "[c]ite the regulations upon which the proposed action is based."  Ohio Adm.Code 5101:2-14-40(L)(1) and (2), effective November 15, 2010.  The administrative decision must be based upon the "(1) [f]acts and evidence presented at the county appeal review [and] (2) Ohio department of job and family services (ODJFS) regulations governing * * * type B homes * * *."  Ohio Adm.Code 5101:2-14-40(M)(1) and (2), effective November 15, 2010.  The decision must include not only "[f]indings of facts," but also a "[c]itation and summarization of relevant Administrative Code rules which support the facts established."  Ohio Adm.Code 5101:2-14-40(N)(2) and (3), effective November 15, 2010.

{¶10} During its opening statement at the county appeal review hearing, counsel for JFS mentioned twice that the child in question choked on a "large" object. JFS called one witness, its agency childcare specialist, Janet Gulish, whose job responsibilities included inspecting daycare providers' homes to ensure their compliance with applicable rules and regulations. Ms. Gulish testified that she inspected Ms. Kelly's home approximately one week prior to the incident. According to Ms. Gulish, Ms. Kelly passed the inspection and was in compliance with all applicable rules.

{¶11} Ms. Gulish testified that the Administrative Code sections cited in the letters provided to Ms. Kelly, including Sections 5101:2-14-20(A)-(B) and 5101:2-14-06(B)(1) and (C)(1), were the basis for the agency's decision to revoke Ms. Kelly's certification. She further testified that Ms. Kelly's certification was terminated "[f]or the reasons * * * described in the opening statement * * *" and that "[i]t was based on her failure to provide a safe environment for [the] child."

{¶12} According to Ms. Gulish, when she delivered JFS's termination letters to Ms. Kelly on March 28, 2013, Ms. Kelly spoke with her about the incident. Ms. Gulish testified that Ms. Kelly told her J.M. was not within her sight and sound "the whole time." Ms. Gulish also testified, however, that Ms. Kelly neither relayed to her "what was happening prior to what she was doing at the time or what the child was doing" nor did she inquire of Ms. Kelly about such facts. Ms. Kelly told her that J.M. choked on a toy cucumber from a play set and showed her similar items from the set. Ms. Gulish testified that Ms. Kelly told her she measured the toy and that it was age appropriate.

{¶13} The only other witness at the county appeal review hearing was Ms. Kelly. She testified that she was caring for three children at the time of the incident. J.M. was sitting on a

chair watching a video in the family room, a two-year-old child was in a playpen also in the family room, and a 3-year-old child was watching a video in a nearby bedroom. Ms. Kelly testified that she noticed J.M. had a toy and told him he was not supposed to play with it as he was to be watching his movie but that she did not take it away from him. According to Ms. Kelly, she walked back to the bedroom to check on the 3-year-old child. She was gone approximately 60 seconds. While J.M. and the other child in the family room were not within her sight, they were within her hearing. Ms. Kelly testified that she heard J.M. walking in the hallway behind her. She turned around and noticed that he was choking. She tried to extract the object to no avail. Ms. Kelly described the toy as a cucumber that separates in half with both halves adhering to each other with Velcro. It was part of a vegetable play set that she had for approximately 23 years. Ms. Kelly testified that other children played with the toys without incident. According to Ms. Kelly, the toy was age appropriate as "[i]t was too big to swallow."

**{¶14}** The hearing officer's decision upheld JFS's revocation of Ms. Kelly's certification. The decision included a section titled "Conclusion of Policy" that referenced various Administrative Code sections. Besides referencing Sections 5101:2-14-20(A)-(C) and 5101:2-14-19(A)(11), the "Conclusion of Policy" also discussed Revised Code Section 5104.11(A)(3)(b) and (B).[1]

**{¶15}** At the time of the appeal review hearing, Section 5104.11(A)(3)(b) provided that if JFS "determines that the information, when viewed within the totality of the circumstances, reasonably leads to the conclusion that the applicant may directly or indirectly endanger the health, safety, or welfare of children, the county department shall * * * revoke the certification of an authorized provider." Section 5104.11(B) authorized the county director to revoke the

---

[1] The hearing officer's decision erroneously cites to these sections as "OAC 5104:4.11(B)" and "5104:11(A)(3b)."

provider's certificate "after determining that revocation is necessary." Administrative Code Section 5101:2-14-19 proscribed certain safety requirements for childcare providers including that "[t]oys * * * small enough to be swallowed shall be kept out of the reach of infants and toddlers." Ohio. Adm. Code 5101:2-14-19(A)(11), effective July 1, 2011.

{¶16} The hearing officer's decision also included an analysis section that provided as follows:

> Ms. Kelly has been a child care (sic) provider since 1994 and has not had any reported incidents. Per the Type B Provider Manual rules, Ms. Kelly did follow the proper procedures and took appropriate actions while trying to assist the child from choking. Ms. Kelly testified she was not in the room where the two children were playing while checking on the child in the back bedroom. The child was playing with a toy cucumber that was part of a velcro vegetable set. The toy was not available to view as evidence. Per the manual, toys or any material small enough to be swallowed should be kept out of the reach of toddlers. The object was small enough for the 2½ yr[.] old to swallow which caused him to choke and ultimately die. Ms. Kelly did notify the agency and filed the incident report timely.

The analysis included an additional paragraph detailing the procedural steps JFS took to revoke Ms. Kelly's certification.

{¶17} The common pleas court found that while the hearing officer "merely noted" Section 5101:2-14-19(A)(11) in her decision, she did not specifically find that Ms. Kelly violated that Section. The trial court further determined that "[e]ven if this notation had not been made, revocation was still appropriate in light of the OAC 5101:2-14-20(A) violation" concerning the necessity to adequately supervise all children in the provider's care including the requirement that all children are within the provider's sight or hearing.

{¶18} Ms. Kelly challenges the decision's citation to Section 5101:2-14-19(A)(11), which concerns a toddler's access to toys that are small enough to be swallowed, as JFS's notice of revocation did not inform her that she allegedly violated this Section. Ms. Kelly argues that

the hearing officer relied in part on this Section in finding that JFS was correct in revoking her certification. She claims that this hampered her defense as she was not aware that the size of the object was an issue in the case. JFS disputes that the decision relied on Section 5101:2-14-19(A)(11) in upholding the revocation as evidenced by the fact that it did not make a specific finding as to the toy's size. It further maintains that the main basis of the decision affirming the revocation was Ms. Kelly's lack of supervision as required by Section 5101:2-14-20. The State argues that the decision's reference to Section 5101:2-14-19 was an aside that was mentioned as part of the hearing officer's consideration of the totality of the circumstances in finding that JFS acted correctly in revoking Ms. Kelly's certification.

{¶19} While the trial court is correct in its observation that the administrative decision never specifically found that Ms. Kelly violated Section 5101:2-14-19(A)(11), this Court notes that the decision did not include a finding as to which Section(s) Ms. Kelly allegedly violated. Given the lack of specificity in the administrative decision as to which Section(s) Ms. Kelly violated, we are left to speculate as to the basis of the decision. On the one hand, the decision's analysis section references the fact that Ms. Kelly was not in the same room as J.M. when he choked while also including as a finding of fact that J.M. and the other child in the family room were within her hearing. We note, however, that Section 5101:2-14-20 proscribes that all children must be within the sight *or* hearing of the childcare provider at all times. (Emphasis added.) Ohio Adm. Code 5101:2-14-20(C), effective August 14, 2008. While JFS maintains that Ms. Kelly conceded the fact that J.M. was not within either her sight or hearing according to Ms. Gulish's testimony, this was a disputed fact as Ms. Kelly testified that he was at least within her hearing. The administrative decision appeared to credit the testimony of Ms. Kelly over Ms. Gulish as it specifically found that Ms. Kelly "could still hear the other children playing * * *."

{¶20} On the other hand, other than the reference to Ms. Kelly not being in the same room as J.M., the administrative decision's analysis focused on the fact that the toy was small enough for J.M. to swallow. There was no additional discussion about the alleged lack of supervision that JFS argues forms the main basis of the decision to revoke Ms. Kelly's certification.

{¶21} We are also troubled by the fact that JFS twice referenced the size of the toy in its opening statement and proceeded to ask Ms. Gulish questions designed to elicit testimony about the age appropriateness of the toy. This defies JFS's assertion that the decision to revoke Ms. Kelly's certification was premised on the rule concerning supervision rather than the rule pertaining to the safety of objects within a toddler's reach.

{¶22} Given the lack of specificity in the administrative decision about which Section(s) Ms. Kelly violated, coupled with the focus on the size of the toy and lack of analysis concerning an alleged failure to adequately supervise the child, we are left to conclude that the decision relied on Section 5101:2-14-19(A)(11) in upholding JFS's decision to revoke Ms. Kelly's certification. JFS's written notices fail to cite to this Section as a basis for revocation of her license in contravention of Section 5101:2-14-06(D), which requires that the agency cite the applicable "rule or statute violated." Accordingly, we conclude that the trial court abused its discretion in affirming the administrative decision that revoked Ms. Kelly's certification. Due to the lack of specificity in the administrative decision, this Court remands the matter to the trial court with instructions for it to remand the matter to the agency for a new county appeal review. *See Coleman v. State Med. Bd. Of Ohio*, 10th Dist. Franklin No. 06AP-1299, 2007-Ohio-5007, ¶ 19-20. Ms. Kelly's second assignment of error is sustained.

ASSIGNMENT OF ERROR I

APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY OHIO CONSTITUTION ART. I, § 10 WERE VIOLATED FOR [THE] REASON THAT THE FINDINGS OF THE HEARING OFFICER WERE NOT SUPPORTED BY THE FACTS AND NO INVESTIGATION WAS CONDUCTED BY APPELLEE TO DETERMINE THE TRUE FACTS OF THIS CASE.

{¶23} Ms. Kelly argues in her first assignment of error that the trial court's judgment affirming the administrative decision was not based on "substantive, reliable and probative evidence" as JFS did not conduct either its own investigation or review the reports of other agencies, such as the police, that were involved in the case. Given our resolution of Ms. Kelly's second assignment of error that results in a remand for a new county appeal review, the foregoing assignment of error is moot. Therefore, we decline to address it. App.R. 12(A)(1)(c).

III.

{¶24} Ms. Kelly's first assignment of error is moot. Her second assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
EILEEN T. GALLAGHER
FOR THE COURT

BELFANCE, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶25} I respectfully dissent, as I would conclude that the trial court did not abuse its discretion by affirming the administrative decision revoking Ms. Kelly's certification.

{¶26} The Department of Job and Family Services notified Ms. Kelly that it was revoking her child care certification based on her violation of O.A.C. 5101:2-14-20 which requires a provider to be responsible for the child's safety and to never leave a child unsupervised. "Supervision means the provider has knowledge of a child's needs and accountability for his or her care at all times. Supervision includes awareness of and responsibility for the activity of each child and being near enough to intervene if needed." O.A.C. 5101:2-14-20(B). The notice also alleged a violation of O.A.C. 5101:2-14-06, which allows revocation on the basis of noncompliance with Chapter 5101:2-14 of the Administrative Code.

{¶27} The trial court found that, while the hearing officer referenced O.A.C. 5101:2-14-19(A)(11) (regarding the propriety of toys) in her decision, the hearing officer did not premise the propriety of revocation of certification on a violation of that section. Instead, the trial court recognized that the hearing officer properly understood that the circumstances of the child's death were relevant to a finding that Ms. Kelly had failed to properly supervise the child. That the child choked on a toy was merely evidence of Ms. Kelly's lack of awareness as to the child's activity at a time when she was not near enough to intervene and prevent the harm.

{¶28} Ms. Kelly had proper notice of the alleged violations underlying the revocation of her certification. Specifically, she was notified that revocation was based on her failure to supervise the child. The trial court did not abuse its discretion by affirming the administrative decision that premised revocation on facts indicating that Ms. Kelly had failed to properly supervise the child. Accordingly, I would affirm the trial court's judgment.

(Gallagher, J., of the Eighth District Court of Appeals, sitting by assignment.)


APPEARANCES:

LAWRENCE J. WHITNEY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.